**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| MICHAEL BULLA,<br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br>    Defendant. | CAUSE NO.: 2:15-CV-214-JEM |

## **OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Michael Bulla on June 4, 2015, and Plaintiff's Brief in Support of his Motion to Reverse the Decision of the Commissioner of Social Security [DE 18], filed by Plaintiff on November 25, 2015. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On March 1, 2016, the Commissioner filed a response, and on March 10, 2016, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**I.    Procedural Background**

On November 16, 2011, Plaintiff filed an application for benefits alleging that he became disabled on December 30, 2008. Plaintiff's application was denied initially and upon reconsideration. On January 30, 2014, Administrative Law Judge ("ALJ") Patricia Witkowski Superman held a video hearing at which Plaintiff, with an attorney representative, and a vocational expert ("VE") testified. On February 12, 2014, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.    The claimant met the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since December 30, 2008, the alleged onset date.

3. The claimant had the following severe impairments: morbid obesity, degenerative joint disease of the shoulders bilaterally, degenerative disc disease, and adjustment disorder with depressed mood.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity to perform light work except that the claimant can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. The claimant can occasionally balance and stoop, but can never kneel, crouch, or crawl. The Claimant can frequently reach in al directions, including overhead, with the bilateral upper extremities. The claimant can tolerate occasional exposure to wetness, vibration, fumes, and hazards such as moving machinery, but cannot be around unprotected heights. The claimant cannot ambulate on slippery or uneven surfaces. The claimant is limited to unskilled work tasks that can be learned by demonstration or less of a simple, repetitive, and routine nature. He is limited to occasional contact with the general public of an incidental and superficial nature, as well as occasional interaction with supervisors and coworkers. He is further limited to occasional decision-making and occasional changes in the work setting. The claimant cannot meet fast pace or strict production quotas, but can meet production goals.

6. The claimant has no past relevant work.

7. The claimant was 47 years old, defined as a younger individual, on the alleged disability onset date, and subsequently changed age category to closely approaching advanced age.

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because the claimant does not have past relevant work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 30, 2008, through the date of this decision.

The Appeals Council denied Plaintiff's request for review and denied his request to reopen the decision, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Facts

In May, 2008, MRIs demonstrated that Plaintiff suffered from mild scoliosis, osteoarthritis, and mild disc space narrowing in his low spine, as well as arthritic changes in both of his hips. In the fall of 2009, he went to his primary care physician, Dr. Oetter, who diagnosed him with osteoarthritis and prescribed pain medication. In September 2009, Dr. Oetter opined that Plaintiff was unable to do physical work and had significant limitations in his ability to bend, crawl, reach above his shoulders, and do repetetive leg movements, and had moderate limitations in his ability to walk, lift, grasp, squat, and climb. Dr. Oetter continued to treat Plaintiff for his ongoing pain, including pain in his shoulder and back.

In December 2011, consultative examiner Mutena Korman, M.D., examined Plaintiff for the state agency and found limited range of motion in Plaintiff's spine, arms and legs, with a partially frozen left shoulder, muscle spasms and tenderness in his spine, and reduced strength in his arms and legs, including reduced grip strength in his left hand. A state agency reviewing physician limited Plaintiff to light work with additional limitations, including that he could not perform overhead work.

### III. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## IV. Analysis

Plaintiff argues that the ALJ did not properly evaluate the medical opinions in the record and did not explain how the record supports the limitations in the RFC. The Commissioner argues that the ALJ's findings are supported by substantial evidence.

The RFC is an assessment of what work-related activities the claimant can perform despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). Although an ALJ is not required to discuss every piece of evidence, she must consider all of the evidence that is relevant to the disability determination and provide enough analysis in her decision to permit meaningful

5

judicial review. *Clifford*, 227 F.3d at 870; *Young,* 362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence to his conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

Plaintiff argues that the ALJ erred in failing to explain why she rejected the physical limitations described by Plaintiff's treating physician and the state agency medical professionals. The Commissioner argues that the ALJ's reasoning was well-supported.

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Being "not inconsistent" does not require that opinion be supported directly by all of the other evidence "as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." SSR 96-2p, 1996 WL 374188, at *3 (July 2, 1996). To be "substantial," conflicting evidence "need only be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.; *see also Schmidt v. Barnhart*, 395 F.3d at 744. If the ALJ declines to give a treating source's opinion controlling weight, he must still determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20

C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6). "If the ALJ discounts the [treating] physician's opinion after considering these factors, [the Court] must allow that decision to stand so long as the ALJ 'minimally articulated' his reasons." *Elder v. Astrue,* 529 F.3d 408, 415 (7th Cir. 2008) (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[W]henever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision."); *Schmidt v. Astrue*, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if it . . . 'is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability.'") (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)).

Treating physician Dr. Oetter found that Plaintiff suffered from limitations in lifting and reaching, among other things, but the ALJ gave "minimal weight" to his assessments, explaining that "they are not supported by any clinical basis" and because the limitations were not reflected in his treatment notes. The state agency examining physician found that the range of motion in Plaintiff's right shoulder was limited and that the shoulder was partially frozen. The state agency consultant concluded that Plaintiff could not perform overhead work, and the ALJ stated that he gave "great weight" to the state agency medical assessments. The ALJ did not explain how the similarities in limitations as described by all three medical professionals made the treating physician's opinion less worthy of weight, nor did she identify any physician who opined that Plaintiff did not have limitations in his ability to reach overhead. Instead, she disregarded the repeated medical reports of limitation because "the claimant demonstrated the ability to reach his *left* arm up and above his shoulder at the hearing, with no apparent

7

difficulty." AR 18 (emphasis added). Although the ALJ is permitted to take her own observations into account, the ability to reach one arm up to a certain level, once, in a non-work setting, as viewed over a video feed, does not say anything about the accuracy of the reports of actual medical professionals who examined Plaintiff in person and assessed his physical limitations in lifting *both* arms. Not only does the ALJ's rejection of the treating physician's conclusions make little sense when compared to the similar conclusions of the agency consultant, but, despite her statements about the weight given to the state agency consultant, she completely rejected all the medical opinions about Plaintiff's reaching limitations based in large part on her interpretation of her observations at the hearing. The Seventh Circuit has repeatedly held that ALJs are not to make their own independent medical findings. *See, e.g., Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009); *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). ALJs have been warned not to "succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (citing cases). Not only did the ALJ fail to draw a logical bridge between the weight given to the treating and consulting physicians, but substituted her own medical judgment for that of all physicians regarding Plaintiff's postural limitations. *See, e.g., Hamilton v. Colvin*, 525 F. App'x 433, 438-39 (7th Cir. 2013) (remanding in part for failure to address conflict between the RFC and physicians' opinions about her capacity); *Roddy*, 705 F.3d at 636 ("Even though the ALJ was not required to give [the treating physician]'s opinion [that the claimant could not handle a full-time job] controlling weight, he was required to provide a sound explanation for his decision to reject it.").

In addition to disregarding the statements in the record about Plaintiff's limitations in reaching, Plaintiff argues that the ALJ also ignored records indicating restrictions in gripping and handling. Despite giving "great weight" to the consultative examiner's opinions, the ALJ did not incorporate the consultative examiner's findings of difficulties gripping, handling, and fingering. Not only is there no logical bridge between the amount of weight the ALJ stated she gave the report and its contents, but the ALJ appears to have simply ignored the evidence in the record of these limitations, merely stating that there is "minimal to no corroboration in the treatment record" without actually addressing the reports of manipulative limitation. The Seventh Circuit Court of Appeals has warned ALJs against cherry-picking evidence in the record to find improvement. "An ALJ cannot rely only on the evidence that supports her opinion." *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (quoting *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)); *see also Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("[T]he ALJ identified pieces of evidence in the record that supported her conclusion that [the plaintiff] was not disabled, but she ignored related evidence that undermined her conclusion. This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence."); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

Some of the reasons that the ALJ gave for discounting Plaintiff's testimony, and accordingly to reduce the weight given to the medical opinions in the record, are also concerning. For example, one of the reasons the ALJ gave for discounting the consultative examiner's conclusion was Plaintiff's daily activities, specifically that Plaintiff was capable of

9

"driving, preparing meals, performing chores, and performing personal care tasks." AR 18. Not only does this list overstate Plaintiff's testimony that he drives "as little as possible" and attempts minimal household chores such as "do[ing] dishes when I'm able, and I try to clean up, [and] do a little bit of vacuuming," AR 41, but the Seventh Circuit Court of Appeals has repeatedly criticized discounting a claimant's reported symptoms on the basis of an ability to take care of personal hygiene, children, or basic household chores. *See, e.g., Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) ("An ALJ cannot disregard a claimant's limitations in performing household activities. The ALJ here ignored [the plaintiff]'s numerous qualifications regarding her daily activities" and methods of coping with pain); *Zurawski*, 245 F.3d at 887 (asserting that daily activities, such as doing laundry, helping children prepare for school, cooking, and washing dishes do not necessarily undermine or contradict a claim of disabling pain). To the extent that the ALJ was also using Plaintiff's ability to perform some activities of daily living as indicating an ability to perform full-time work, the Seventh Circuit has repeatedly emphasized that a person's ability to perform daily activities does not indicate an ability to work outside of the home. *See, e.g., Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases."); *Punzio*, 630 F.3d at 712 ("[The Plaintiff's] ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace."); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006)

("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home . . . The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment . . . often differ dramatically between home and office or factory or other place of paid work.").

Similarly, the ALJ stated that Plaintiff "injured himself while carrying plywood in December 2011, which suggests extensively greater exertional, postural, and manipulative capacity than alleged." AR 19. The medical records she cites to are dated June 6, 2012. At the hearing, the ALJ questioned Plaintiff about the emergency room visit: "[H]ow is it, sir, that in June of 2012 you were carrying a piece of plywood?" AR 38. Plaintiff responded that he did not remember the details of the incident that caused his broken ribs, but did state that he remembered the excruciating pain and the fact that he felt like he had never fully recovered from the injury. The emergency room records themselves do not indicate that Plaintiff was carrying the plywood, but merely that he had been hit with plywood. Although she refers to the same medical records, it is possible that the ALJ is referring to two separate instances; however, neither the medical records cited to nor Plaintiff's testimony state that his broken ribs were a result of his doing work or carrying plywood. Even if Plaintiff's broken ribs were caused because he tried to lift plywood, that failure does not indicate that Plaintiff is capable of continued lifting or carrying. *See, e.g., Scrogham*, 765 F.3d at 700 ("Further, at least one of the activities was a precipitating event that led to one of Mr. Scrogham's doctor visits. Surely, this type of ill-advised activity cannot support a conclusion that Mr. Scrogham was capable of performing fulltime work."); *Hollister v. Colvin*, No. 2:12-CV-52-PRC, 2013 WL 718479, at *7

(N.D. Ind. Feb. 26, 2013) ("The ALJ does not explain how Plaintiff's failed attempt to climb a ladder indicates his ability to balance rather than support his allegation that he is incapable of activities, such as climbing ladders, that require good balance.").

The ALJ also disregarded Plaintiff's reports that he needed a cane or crutches to help him get around, stating that Plaintiff "presented to the hearing without an assistive device" and reasoning that his alleged use of assistive devices is inconsistent with his other claims, since "one would reasonably expect that use of crutches would exacerbate [Plaintiff]'s shoulder pain, or that he would be unable to use crutches at all with severe pain." AR 19. At the hearing, the ALJ noted that Plaintiff "walked into the room with a pair of crutches" and asked about his use of them. AR 36. Plaintiff testified that he had been using a cane, but it broke, and when he was unable to purchase another one a friend lent him the crutches. AR 36. The ALJ did not ask whether the assistive devices caused additional pain or if Plaintiff had to make a trade-off between being able to get around without falling and experiencing additional shoulder pain, but instead discounted all of Plaintiff's testimony about his limitations on the basis of his claimed need for an assistive device. The ALJ also failed to include any need for an assistive device in the RFC, although she did note that the jobs described by the VE "could still be performed with the use of the cane." The Court is concerned by the complete lack of logical reasoning, and cannot ascertain any bridge of logic between seeing Plaintiff using crutches and determining that not only does Plaintiff not need crutches, but that the fact that Plaintiff claims to need assistive devices means that he is not being truthful about his pain. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("Absurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane. A cane does not require a

prescription."). The regulations specifically remind ALJs to take into account that, for example, "[a]n individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities . . . that aggravate his or her symptoms." SSR 16-3p, 2016 WL 1119029, at *9 (Mar. 16, 2016) *superseding* SSR 96-7p, 1996 WL 374186, at *8 (Jul. 2, 1996) ("The individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms.").

The ALJ failed to give controlling weight to the treating physician's opinions about Plaintiff's physical limitations, despite their similarity to the agency physicians' opinions and other evidence in the record, appearing to substitute her own medical judgment for that in the record, and failed to draw a logical bridge from the evidence to her conclusions about Plaintiff's actual symptoms and limitations.

On remand, the ALJ is instructed to draw a logical bridge from the evidence as it actually appears in the record to her conclusions about Plaintiff's RFC, and must thoroughly explain the weight given to Plaintiff's treating and examining physicians, particularly their opinions about Plaintiff's physical limitations. She is reminded of the need to fully review all of the medical evidence in the record and to obtain additional information as needed. *See, e.g., Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.") (citing 20 C.F.R. § 404.1527(c)(3); SSR 96-2p, 1996 WL 374188 at *4 (July 2, 1996));  20 C.F.R. §§ 404.1512(d)(1), 416.919(b)); *see also Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (citing 20 C.F.R. §§ 416.912(d)-(f), 416.919, 416.927(c)(3)) (other citations omitted).

Plaintiff also argues that the ALJ erred in failing to resolve a conflict between testimony provided by the VE and information contained in the Dictionary of Occupational Titles. In particular, the VE stated that certain jobs could be learned by demonstration or less, but Plaintiff argues that the jobs the ALJ found Plaintiff was capable of performing have a Specific Vocational Preparation of two, indicating that they require more than demonstration to be learned.

When an ALJ relies on testimony from a VE to make a disability determination, the ALJ must incorporate all of the claimant's limitations supported by medical evidence in the record. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) ("Furthermore, to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers.") (citation omitted). If the VE is unaware of all of the Plaintiff's limitations, he may refer to jobs the Plaintiff cannot perform. *Kasarsky*, 335 F.3d at 543. In addition, the ALJ must make certain the jobs the VE identifies are consistent with Plaintiff's DOT reasoning level. *Prochaska*, 454 F.3d at 735. "Under SSR 00–4p, . . . the ALJ has an affirmative responsibility to ask if the VE's testimony conflicts with the DOT, and if there is an apparent conflict, the ALJ must obtain a reasonable explanation." *Terry v. Astrue*, 580 F.3d at 477 (citing SSR 00–4p, 2000 WL 1898704 (Dec. 4, 2000)).

New VE testimony will likely be required in this case after the ALJ's determinations are corrected as described above. On remand, the ALJ is cautioned that she must incorporate all relevant limitations in her questioning of the VE and that she has a duty to resolve any conflicts between the VE testimony and the DOT.

Plaintiff requests that the Court reverse the Commissioner's decision and remand for an award of benefits. An award of benefits is appropriate "only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe*, 425 F.3d at 356. In this case, the ALJ failed to properly weigh the medical opinions in the record, to draw a logical bridge from the evidence to his conclusions, or to properly assess Plaintiff's statements regarding his symptoms and limitations. Additionally, although Plaintiff requests an award of benefits, he fails to present a developed argument in favor of doing so. Accordingly, this matter is remanded for further proceedings.

V.   **Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of his Motion to Reverse the Decision of the Commissioner of Social Security [DE 18], and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 14th day of September, 2016.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:   All counsel of record